UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

STEPHANIE E. BAKER,         )
                               )
       Plaintiff,       )
                               )
v.                          )      No. 3:15-CV-224-PLR-CCS
                               )
CAROLYN W. COLVIN,       )
Acting Commissioner of Social Security,       )
                               )
       Defendant.      )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18]. Stephanie E. Baker ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On November 27, 2012, the Plaintiff filed an application for supplemental security income ("SSI"), claiming a period of disability which began September 1, 2006. [Tr. 229-34]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 161-63]. On June 3, 2014, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 59-82]. A subsequent hearing was held on November 6, 2014. [Tr. 36-53]. On December 1, 2014, the ALJ found that the Plaintiff was not disabled.

[Tr. 16-35]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on May 28, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since November 6, 2012, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: anxiety disorder, depression, residuals from right ankle fracture, fibromyalgia, obesity, history of coronary artery disease status post stent placement (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that she can use her bilateral hands and feet on a frequent basis; she can occasionally climb, balance, stoop, kneel, crawl, and crouch; she must avoid concentrated exposure hazards including proximity to moving mechanical parts and working in high exposed places; she is mildly limited in her ability to understand, remember, and carry out simple and low level detailed tasks (SVP 1-3); she is able to maintain concentration and persistence for the above tasks; she is unable to tolerate the stress inducing work situations of dealing with the public, making decisions, using judgment or working at a production rate pace.

2

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.  The claimant was born on May 3, 1978 and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since November 6, 2012, the date the application was filed (20 CFR 416.920(g)).

[Tr. 21-28].


## II.    DISABILITY ELIGIBILITY

This case involves an application for SSI benefits.  To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  See 42 U.S.C. § 1382(a).

"Disability" is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B); see also 20 C.F.R. § 416.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec.,

4

203 F.3d 388, 391 (6th Cir. 1999) (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987)).

III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." <u>Blakley v. Comm'r of Soc. Sec.</u>, 581 F.3d 399, 405 (6th Cir. 2009) (citing <u>Key v. Callahan</u>, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); <u>Warner v. Comm'r of Soc. Sec.</u>, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Cutlip v. Sec'y of Health & Human Servs.</u>, 25 F.3d 284, 286 (6th Cir. 1994) (citing <u>Kirk v. Secretary of Health & Human Servs.</u>, 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. <u>Crisp v. Sec'y of Health & Human Servs.</u>, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." <u>Buxton v. Halter</u>, 246 F.3d 762, 773 (6th Cir. 2001) (quoting <u>Mullen v. Bowen</u>, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984) (citing

5

Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.     POSITIONS OF THE PARTIES

The Plaintiff presents two issues on appeal.  First, she argues that the ALJ failed to properly weigh the opinion of her treating psychiatrist, David Snow M.D., and the opinion of her treating cardiologist, Bret Rogers, M.D.  [Doc. 16 at 11-19].  The Plaintiff avers that the ALJ did not give "good reasons" for the weight assigned to either opinion, nor did the ALJ properly consider the factors under 20 C.F.R. 416.927(c)(1)-(6) for determining the appropriate weight. Second, the Plaintiff contends that the ALJ similarly failed to properly weigh the opinions other non-acceptable medical sources that treated the Plaintiff, including Carol Brown, LCSW, Ina Matthews, PA-C, and Connie Mullins, NP.  [Id. at 19-22].

The Commissioner responds that the ALJ properly considered and weighed the opinion evidence of record.   [Doc. 18 at 5].   With regard to the Plaintiff's treating sources, the Commissioner maintains that the ALJ's residual functional capacity ("RFC") determination is consistent with Dr. Rogers' opinion [id. at 5-6] and that Dr. Snow's opinion was properly

6

discounted to a certain degree because it was not supported by the evidence [id. at 7-11]. As to the opinions of the non-acceptable medical sources, the Commissioner argues that the ALJ properly recognized that such opinions were not due any significant deference and that the opinions were also unsupported and/or too restrictive in light of the medical evidence presented. [Id. at 7, 11-13].

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Treating Sources

The Plaintiff argues that the ALJ failed to give adequate or controlling weight to the medical opinions of her treating sources, Drs. Rogers and Snow, pursuant to 20 C.F.R. 416.927(c)(2), which is commonly referred to as the "treating physician rule."

Under the Social Security Act and its implementing regulations, if a treating source's medical opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." Id. When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. § 416.927(c)(1)-(6).

When an ALJ does not give a treating source's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. §

7

416.927(c)(2).  The purpose of the "good reason" rule is to allow claimants to "understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that [he] is not."  Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007) (quoting Wilson, 378 F.3d at 544) (internal quotations omitted).  Accordingly, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight."  Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Nonetheless, the ultimate decision of disability rests with the ALJ.  See Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 992 (6th Cir. 2007); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

### 1.    Bret Rogers, M.D.

In December 2007, treating cardiologist, Dr. Rogers, diagnosed the Plaintiff with coronary artery disease after undergoing a catheterization due to chest pain.  [Tr. 359].  A different cardiologist performed a stent placement on the Plaintiff the following year.  [Tr. 367].  On September 21, 2009, the Plaintiff was treated for recurrent unstable angina, at which time Dr. Rogers performed a second catheterization.  [Tr. 369-71].  The catheterization showed no evidence of significant stenosis.  [Id.].  The Plaintiff continued routine care with Dr. Rogers through May 2012.  [Tr. 387-443].  While the Plaintiff intermittently complained of chest pain and discomfort, Dr. Rogers observed in August 2010 and again in February and October 2011 that the Plaintiff was doing well from a cardiovascular standpoint and her cardiovascular issues were stable.  [Tr. 405, 440, 442].  An EKG performed in August 2010 and February 2011, as

8

well as a stress test conducted in March 2012, returned normal findings. [Tr. 408-09, 441, 443].

On March 8, 2012, Dr. Rogers completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)," wherein he opined that the Plaintiff could: lift up to 10 pounds continuously, 11 to 59 pounds frequently, and 51 to 100 pounds occasionally; carry up to 20 pounds continuously and 21 to 100 pounds frequently; sit for a total of eight hours, stand for a total of four hours, and walk for a total of two hours in an eight-hour workday; and perform a variety of activities such as personal hygiene maintenance, shop, travel, cook, ambulate without assistance, and walk and climb at a reasonable pace. [Tr. 670-71, 675].

In the disability determination, the ALJ assigned "great weight" to Dr. Rogers' lifting and carrying restrictions, finding that said restrictions placed the Plaintiff in the medium exertional level and was consistent with Dr. Rogers' conclusion that the Plaintiff's cardiovascular issues were stable. [Tr. 25]. Without any further explanation, the ALJ stated that he only gave "some weight" to Dr. Rogers' standing and walking restriction. [Id.].

The Plaintiff argues that the ALJ erred by failing to provide any rational for assigning "some weight" to Dr. Rogers' standing and walking restriction. [Doc. 16 at 12]. The Plaintiff further argues that the ALJ failed to consider the factors under 20 C.F.R. § 416.927(c)(1)-(6) for determining the amount of weight Dr. Rogers' standing and walking restriction was due. [Id. at 16]. The Commissioner counters that the ALJ's RFC finding, which limits the Plaintiff to medium work, is actually consistent with Dr. Rogers' standing and walking limitation, thereby making any deficiency in the ALJ's analysis harmless. [Doc. 18 at 6].

The Court concurs with the Commissioner. "[M]edium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." Soc. Sec.

9

Rul. 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Here, Dr. Rogers opined that the Plaintiff could stand for four hours and walk for two hours in an eight-hour workday. In other words, Dr. Rogers concluded that the Plaintiff could stand and walk for a total of six hours in an eight-hour workday. Therefore, while the ALJ may have erred in failing to provide "good reason" for assigning Dr. Rogers' standing and walking limitation "some weight," the Court finds that the error was harmless because the ALJ's RFC determination coincides with the standing and walking restriction assessed by Dr. Rogers. See Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. Apr. 28, 2010) (holding that a violation of the "good reason" rule is harmless "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion") (citation omitted).

Accordingly, the ALJ's procedural lapse in providing a reasoned explanation for the assignment of "some weight" did not deprive the Plaintiff of an important benefit or safeguard. See Wilson, 378 F.3d at 546-47 (explaining that an ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses"). Thus, remanding the matter on this issue would serve no meaningful purpose as the Plaintiff's RFC had the effect of assigning Dr. Rogers' opinion controlling weight. See Kobetic v. Comm'r of Soc. Sec., 114 F. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'") (quoting NLRB v. Wyman–Gordon Co., 394 U.S. 759, 766 n.6 (1969)).

## 2. David Snow, M.D.

The Plaintiff received mental health treatment from treating psychiatrist Dr. Snow beginning in May 2009 through June 2012 for social anxiety disorder. [Tr. 444-63]. The Plaintiff was seen by Dr. Snow on average once a month to once every three months with care consisting of medication management. [Id.]. During the Plaintiff's course of treatment, Dr. Snow typically assessed a global assessment of functioning ("GAF") score between 60 and 85, indicating that the Plaintiff experienced only moderate symptoms at worse.[1] [Tr. 445-47, 450-55, 457, 459]. On only two occasions was the Plaintiff assigned a GAF score below 51. Specifically, in July 2010, the Dr. Snow assessed the Plaintiff a GAF score of 50, indicating serious symptoms of impairment[2], after the Plaintiff reported that she was "not too well" and would not leave the house. [Tr. 458]. In October 2010, the Plaintiff was assessed with a GAF score of 40, indicating some impairment in reality testing or communication or major impairment in the areas of work, school family relationships, judgment, thinking, or mood[3], after reporting to Dr. Snow that she was "not doing good," her motivation and energy was down, and her memory was poor. [Tr. 456]. While Dr. Snow's GAF scores typically reflected symptoms that ranged between moderate to transient in nature, the Plaintiff routinely reported fluctuation in her mood and anxiety, sometimes relaying that she was doing good and getting out more and other times reporting she was not doing as well or that her mood was only "okay." [Tr. 445-63].

On March 15, 2013, Dr. Snow completed a "Medical Source Statement Ability to do

---

[1] A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty; a score between 61 and 70 reflects mild symptoms or some difficulty; a score between 71 and 80 indicates that any symptoms that are present are transient in nature, expected reactions to psychosocial stressor, and present no more than a slight impairment in functioning; and a score between 81 and 90 indicates an absence or minimal appearance of symptoms and good function in all areas. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34, 4th ed. (revised) 2000.

[2] Id.

[3] Id.

Work-Related Activities (Mental)," wherein he opined that the Plaintiff had "marked" limitations in carrying out complex instructions, interacting appropriately with the public, supervisors, and co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. [Tr. 677-78]. In addition, Dr. Snow opined that the Plaintiff had "extreme" limitations in carrying out complex instructions or making judgments on complex work-related instructions. [Tr. 677]. Dr. Snow based his opinion of the Plaintiff's diagnosis of severe social anxiety disorder, which he explained resulted in the Plaintiff needing assistance to travel or shop, and "formal testing" that demonstrated marked concentration impairments. [Tr. 677-78].

The ALJ assigned Dr. Snow's opinion "little weight" for two reasons. First, the ALJ observed gaps in the Plaintiff's treatment history. [Tr. 26]. The ALJ noted that the Plaintiff did not receive treatment between October 2009 and April 2010, April 2010 and July 2010, December 2010 and March 2011, and finally July 2011 and December 2011. [Id.]. Second, the ALJ discounted Dr. Snow's opinion because records from Peninsula, where the Plaintiff was also receiving mental health treatment, indicated in April 2013 and again in July 2014, that the Plaintiff reported she did not want to continue therapy. [Id.]. Based upon the foregoing, the ALJ found Dr. Snow's opinion "overly restrictive and inconsistent with the evidence of record." [Id.].

The Plaintiff argues that the ALJ failed to specify what evidence was inconsistent with Dr. Snow's opinion, and further argues that gaps in treatment, as well as purportedly declining therapy, are not "good reasons" for rejecting Dr. Snow's opinion. [Doc. 16 at 13]. The Plaintiff contends that the Sixth Circuit Court of Appeals has cautioned adjudicators against penalizing claimants with mental impairments for failing to seek appropriate treatment. [Id.] (citing Blankenship v. Brown, 874 F.2d 1116, 1124 (6th Cir. 1989)). As to declining therapy, the

12

Plaintiff argues that although she reported she did not need therapy in April 2013 because she felt she had a good family support system in place, she ended up returning two months later. [Id. at 13-14]. With regard to declining therapy in July 2014, the Plaintiff maintains that the "therapy" reference was in response to treatment for her fibromyalgia, not her mental impairments. [Id. at 14].

The Commissioner argues that Dr. Snow's opinion is contrary to his own treatment notes as well as other evidence in the record. [Doc. 18 at 8-10]. The Commissioner cites to the GAF scores assigned by Dr. Snow, which generally indicate mild to moderate symptoms, as evidence contradicting the marked and extreme limitations he assessed. [Id. at 8]. In addition, the Commissioner argues that while the Plaintiff's marked limitations in concentration were purportedly based upon "formal testing," no psychological testing was made part of the record and other medical evidence indicates mild, if any, deficits in concentration. [Id. at 8-9]. Similarly, the Commissioner cites to other opinion evidence, as well as the Plaintiff's own statements that she had friends, was dating, and did not need assistance going out, as evidence that contradicted Dr. Snow's conclusion that the Plaintiff required assistance to shop and travel. [Id. at 9]. Finally, the Commissioner contends that the ALJ's consideration of the frequency of treatment and the Plaintiff declining therapy were appropriate factors that discredited Dr. Snow's opinion. [Id. at 9-10].

The Court observes that while it may be a "questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation," Blankenship, 874 F.2d at 1124, an ALJ is not precluded from drawing a negative inference from a failure to follow through with recommended treatment where there is "no evidence suggesting that Claimant's mental condition somehow hindered him from seeking examination or treatment,"

13

Strong v. Soc. Sec. Admin., 88 F. App'x 841, 846 (6th Cir. 2004) (recognizing that "[i]n some circumstances, of course, a failure to seek examination or treatment may say little about a claimant's truthfulness," such as the claimant in Blankenship who operated under a mental impairment, but observed in this case, there was no evidence that Strong's mental impairment impeded his ability to seek or obtain care).  Here, like the claimant in Strong, there is no indication that the Plaintiff's anxiety hindered her from seeking appropriate care.  In fact, the Plaintiff was routinely seen by multiple providers, including Dr. Snow, for mental health treatment over the relevant time period, suggesting that the Plaintiff's impairment in no way affected her ability to seek or maintain medical care.  Moreover, the Plaintiff's decision to decline therapy was voluntary and did not end other mental health services that the Plaintiff was receiving from Peninsula.

Nonetheless, the Court finds that the reasons cited by the ALJ for discounting Dr. Snow's opinion fall short of "good reasons."  First, as to the Plaintiff's "gap" in treatment with Dr. Snow, the Court observes that Dr. Snow's treatment notes do not specify that the Plaintiff was to return within any particular timeframe, nor do they indicate missed or cancelled appointments or non-compliance with treatment recommendations.  In fact, during the three year treating period, Dr. Snow only indicated on three occasions a specific timeframe in which the Plaintiff was to follow-up, and the Plaintiff was timely in returning for treatment.  [Tr. 446-47, 450-51, 460-61]. While the frequency of treatment is certainly a relevant factor in determining the level of deference a treating physician's opinion is due, the purpose of this factor is to assess whether the claimant has been "seen a number of times and long enough [for a treating source] to have obtained a longitudinal picture of [the claimant's] impairment."  20 C.F.R. § 416.927(c)(2)(i). Here, the ALJ penalized the Plaintiff without support or explanation as to why the Plaintiff

14

should have been seen with greater frequency. Two of the four "gaps" in treatment cited by the ALJ only consisted of a three month window, which the Court finds is not a substantial amount of time, particularly where the Plaintiff was routinely seen every month to every couple of months during the three year treating relationship.

Second, the Court finds that the ALJ's conclusory statement that Dr. Snow's opinion is inconsistent with the evidence of record, without explaining what particular evidence is at odds with Dr. Snow's opinion, does not comport with the requirements of the "good reason" rule. See Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 377 (6th Cir. 2013) (holding that the ALJ's conclusory finding that the treating physician's opinion was inconsistent with other evidence was not supported by substantial evidence where the ALJ failed to identify the inconsistent evidence referred too).

Finally, the Court finds the ALJ's consideration of the Plaintiff declining therapy in April 2013 and July 2014 was appropriate. While the Plaintiff argues that the "therapy" reference in the July 2014 Peninsula medical record was with regard to treatment for the Plaintiff's fibromyalgia, the Court observes that Peninsula exclusively provided mental health services to the Plaintiff, and the Plaintiff's memorandum summarizes treatment received from Peninsula as "mental health treatment" [Doc. 16 at 5-6]. Furthermore, the Court finds that an ALJ may look to other evidence to determine whether a treating physician's opinion is consistent with other substantial evidence in the record. See 20 C.F.R. § 416.927(c)(4). Here, the Plaintiff declining mental health services, such as therapy, may certainly cast doubt as to the severity of the symptoms and disabling limitations alleged. See Strong v. Soc. Sec. Admin., 88 F. App'x 841, 846 (6th Cir. Feb. 3, 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or

15

treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."). However, because the Court has found that the other reasons cited by the ALJ are not "good reasons," the Court finds that the Plaintiff's refusal to attend therapy, in and of itself, is insufficient reasoning to assign "little weight" to Dr. Snow's opinion.

The Court acknowledges the Commissioner's arguments that certain evidence contradicts the supportably of Dr. Snow's opinion, including Dr. Snow's GAF scores, the lack of "formal testing" within the record, treatment notes by other medical sources who observed no more than moderate deficits in concentration, and certain statements made by the Plaintiff with regard to social functioning. These purported shortcomings, however, are reflective of the Commissioner's own reasons as to why Dr. Snow's opinion was not entitled to controlling weight, rather than reasons articulated by the ALJ. The ALJ unequivocally discounted Dr. Snow's opinion based upon the frequency of treatment, the Plaintiff deciding she no longer needed therapy, and inconsistency with other evidence in the record. The Court declines to uphold an ALJ's decision to assign less than controlling weight to a treating source's opinion unless the reasons enumerated by the ALJ are "good reasons" supported by substantial evidence.[4]

---

[4] The Commissioner also cites to portions of the ALJ's decision at step three of the sequential evaluation, at which step the ALJ found that the Plaintiff had no more than moderate limitations in the areas of concentration and social functioning with regard to the "paragraph B" and "paragraph C" criteria, to argue that Dr. Snow's opinion of marked restrictions in these areas is not supported. [Doc. 18 at 8-9]. Findings of moderate limitations in functioning at step three, however, does not mean that the Plaintiff will likewise have no more than moderate limitations with regard to her RFC:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . .

Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Therefore, an ALJ's step three findings are not necessarily reflective or supportive of the limitations and abilities assessed with regard to a claimant's RFC.

16

See Hyatt Corp. v. N.L.R.B., 939 F.2d 361, 367 (6th Cir. 1991) (rejecting appellate counsel's post-hoc rationalization for an agency's decision where no such explanation was enunciated in the decision).

Accordingly, when the ALJ fails to "comprehensively set forth the reasons for the weight assigned to a treating physician's opinion," the Court may remand the case. Hensley v. Astrue, 573 F.3d 263, 267 (6th Cir. 2009) (quoting Wilson, 378 F.3d at 545). A remand, however, is unnecessary if the violation of the "good reasons" requirement is deemed harmless. Cole v. Astrue, 661 F.3d 931, 940 (6th Cir. 2011). A violation of the "good reason" requirement is harmless error if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527[(c)](2) . . . even though she has not complied with the terms of the regulation."

Friend v. Comm'r of Soc. Sec., 375 Fed. App'x 543, 551 (6th Cir. 2010) (citation omitted). The Court finds that none of the exceptions apply to the case here. Therefore, the Court will recommend that the case be remanded to the ALJ to reassess the opinion of Dr. Snow and provide "good reasons" for the weight assigned.

## B. "Other Source" Opinions

The Plaintiff also argues that the ALJ failed to properly evaluate and weigh the opinions of licensed clinical social worker Carol Brown, physician assistant Ina Matthews, and nurse Practitioner Connie Mullins, whom the Plaintiff concedes are "other sources" as defined by the regulations. [Doc. 16 at 19].

17

"Other sources" include medical sources, such as nurse practitioners and physicians' assistance, which are not "acceptable medical source" under the regulations. 20 C.F.R. § 416.913(d). While "Other sources" may provide evidence as to the severity of a claimant's impairment as well as the effects the impairment has on the claimant's ability to work, id., they "cannot establish the existence of a disability," Engebrecht v. Comm'r of Soc. Sec., 572 F. App'x 392, 398 (6th Cir. 2014). Accordingly, opinions rendered by "other sources" are not subject to any special degree of deference. Noto v. Comm'r of Soc. Sec., 632 F. App'x 243, 248-49 (6th Cir. 2015) ("The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record.") (citations omitted). Nonetheless, their opinions may not be ignored.

Social Security Ruling 06-03p explains that opinions from "other sources" are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." 2006 WL 2329939, *4 (Aug. 9, 2006). The Ruling further states that the factors listed in 20 C.F.R. 416.927(c)(1)-(6), which are used for evaluating medical opinions from "acceptable medical sources," remain guiding principles for determining the weight that should be given to opinions from "other sources." Id. These factors include: the frequency of examination, the consistency of the opinion with other evidence, the amount of relevant evidence supporting the opinion, the source's area of expertise, and any other relevant factor that supports or refutes the opinion. Id. at 4-5. However, not every factor need be weighed; the particular facts of each case will dictate which factors are appropriate for consideration in order to properly evaluate the opinion at hand. Id. at 5. Finally, the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise

18

ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at *6.

### 1. Carol Brown, LCSW

The Plaintiff attended therapy with Ms. Brown between January 2012 and May 2012, to help manage symptoms of depression and anxiety. [Tr. 534-37]. After the Plaintiff's initial assessment with Ms. Brown, followed by several therapy sessions, Ms. Brown completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," on February 1, 2012. [Tr. 660-62]. Therein, Ms. Brown opined that the Plaintiff had marked limitations in understanding, remembering, and carrying out complex instruction, as well as making judgments on complex work-related decisions, due to difficulty with memory and concentration caused by symptoms of anxiety and depression. [Tr. 660]. Additionally, Ms. Brown found that the Plaintiff had marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting due to experiencing anxiety around crowds of people and becoming easily stressed in new situations. [Tr. 661].

The ALJ assigned "little weight" to Ms. Brown's opinion because Ms. Brown had only provided treatment to the Plaintiff for a short period of time and had only seen the Plaintiff on a couple occasions before rendering her opinion. [Tr. 25].

The Plaintiff argues that the ALJ's cited reasons were not "good reasons" to reject a "treating source opinion," particularly where the opinion was consistent with the limitations opined by Dr. Snow. [Doc. 16 at 21]. The Commissioner counters that the length of treatment is a relevant and permissible factor considered by the ALJ, and that while Ms. Brown opined upon the Plaintiff's deficits in memory, concentration, and social functioning, her treatment records do

19

not reflect difficulties in these areas.  [Doc. 18 at 11-12].

As an initial matter, the Court notes that the Plaintiff's reference to "treating source" and "good reasons" are legal terms of art that are not applicable to weighing "other source" evidence. A "treating source," in addition to being one who provides, or has provided, medical treatment or evaluation to a claimant on an ongoing basis, must be a "physician, psychologist, *or other acceptable medical source*."  20 C.F.R. § 416.902 (emphasis added).  As a clinical licensed social worker, or "other source," Ms. Brown does not qualify as a "treating source."  See Hatfield v. Astrue, No. 3:07-CV-242, 2008 WL 2437673, at *2 (E.D. Tenn. June 13, 2008) (holding that opinions rendered by "other sources" are "not given the same controlling weight as a 'treating source.'").  In addition, "good reason" need only be given in explaining the weight assigned to an opinion from a "treating source."  See 20 C.F.R. § 416.927(c)(2) (explaining that the "good reason" requirement applies to a "treating source's opinion"); Engebrecht, 572 F. App'x at 399 ("As an 'other source' opinion, Hastings' opinion is not entitled to controlling weight, nor is the ALJ required to give reasons for failing to assign it controlling weight, as that requirement only applies to treating sources.") (citing Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010)); Clark ex rel. S.R.C. v. Comm'r of Soc. Sec. Admin., No. 5:12CV1745, 2013 WL 3007154, at *9 (N.D. Ohio June 11, 2013) ("An ALJ is not required to set forth good reasons for rejecting the opinion of a social worker.").  Rather, Ms. Brown's opinion is assessed pursuant to Social Security Ruling 06-03p which requires that the ALJ consider the opinion and should explain the weight given to the opinion.

The Court finds no error in the ALJ's treatment of Ms. Brown's opinion.  The frequency of examination is a permissible factor the ALJ may consider in determining the supportability of an opinion rendered by an "other source."  In this case, Ms. Brown had only met with the

20

Plaintiff a couple times before rendering her opinion. Significantly, during these therapy sessions, treatment focused on coping with the Plaintiff's recent divorce proceedings. [Tr. 533]. There were no complaints or discussions of difficulties or impairments in areas of concentration or social functioning. Therefore, the Court finds that the ALJ properly observed that the brief nature of the Plaintiff's treating relationship with Ms. Brown failed to support the marked limitations she assessed.

### 2. *Ina Matthews, PA-C*

Ms. Matthews provided routine care to the Plaintiff between May 2009 and August 2012 for a number of conditions and complaints, chief among them being fibromyalgia, arthralgia, insomnia, lower back pain, and coronary artery disease. [Tr. 466-527]. The Plaintiff was also examined by Ms. Matthews one additional time on January 27, 2014. [Tr. 688-92]. On February 15, 2012, Ms. Matthews completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," wherein she assessed that the Plaintiff could perform less than a full-range of sedentary work. [Tr. 663-69]. Ms. Matthews opined that the Plaintiff could: occasionally lift and carry up to 10 pounds due to degenerative joint decease of the thoracic and lumbar spine; sit, stand, and walk up to 160 minutes in an eight-hour workday and 15-20 minutes at one time due to fibromyalgia; occasionally use her right hand due to chronic pain; occasionally use her right foot; and never perform any postural activities. [Tr. 663-66].

Ms. Matthew's opinion was assigned "little weight" by the ALJ who found the opinion overly restrictive based upon the Plaintiff's April 2012 MRI of the lumbar spine, the opinion of Jeffery Uzzle, M.D., who performed a consultative examination on May 8, 2013, and the fact that Ms. Matthews was not an "acceptable medical source." [Tr. 26].

The Plaintiff's MRI revealed suspected remote injury of the T12 superior endplate, but no

21

findings of spinal stenosis, foraminal narrowing, or nerve root comprise. [Tr. 25, 379]. While Dr. Uzzle assessed the Plaintiff with fibromyalgia, as well as nonspecific abdominal tenderness and anxiety, he opined that the Plaintiff could perform less than a full range of medium work based upon a review of the Plaintiff's medical records, his examination findings, and statements made by the Plaintiff. [Tr. 26-27, 647-58]. Dr. Uzzle noted that the Plaintiff was positive for 12 of the 18 fibromyalgia trigger points, was negative for sitting and supine straight leg raises, had normal reflexes, muscle tone, and strength and sensation in all four extremities, and exhibited no neurological deficits. [Tr. 26, 648-49]. The ALJ assigned "great weight" to Dr. Uzzle's opinion. [Tr. 27].

The Plaintiff argues that her MRI fails to support the weight assigned to Ms. Matthew's opinion, because Ms. Matthew also assessed functional limitations based upon the Plaintiff's fibromyalgia. [Doc. 16 at 21]. The Plaintiff further contends that Ms. Matthew's opinion should have been given more weight because her findings "would have been based" upon findings made by Charles Bozeman, II, M.D., [Id.], who is a physician where Ms. Matthews practiced and treated the Plaintiff [Tr. 464-527].

The Commissioner maintains that the ALJ properly found Ms. Matthew's opinion too restrictive in light of the Plaintiff's MRI and Dr. Uzzle's opinion. [Doc. 18 at 7]. As an "other source," the Commissioner maintains that the weight assigned to Ms. Matthew's opinions lies within the sound discretion of the ALJ. [Id.].

The Court finds no error committed by the ALJ. The ALJ properly considered the Plaintiff's MRI in determining whether the imagining results supported the limitations assessed by Ms. Matthews. See Baucom v. Astrue, No. CIV.A. 3:10-00603, 2011 WL 3565242, at *9 (M.D. Tenn. Aug. 15, 2011) adopted by No. 3:10-CV-00603, 2011 WL 4005890, at *1 (M.D.

Tenn. Sept. 8, 2011) (observing that an MRI may constitute "objective evidence" to substantiate a physician's assessment of the claimant's RFC and physical limitations). The ALJ, however, did not exclusively rely upon the Plaintiff's MRI results. The ALJ also properly considered other opinion evidence of record in assessing the weight Ms. Matthew's opinion was due. Here, the ALJ found that Dr. Uzzle's opinion, which acknowledged that the Plaintiff suffered from fibromyalgia, was better supported and more consistent with his examination findings. As pointed out by the Commissioner, it is within the ALJ's prerogative to determine the weight assigned to opinions from sources that are not "acceptable medical sources." The Court finds that the Plaintiff sets forth no legal or procedural error committed by the ALJ in affording more weight to Dr. Uzzle, but simply disagrees with the ALJ's decision to defer to Dr. Uzzle's opinion, which is not a basis for finding that the ALJ committed reversible error.

Moreover, the Court finds no merit in the Plaintiff's contention that Ms. Matthew's opinion deserved more weight by virtue of Dr. Bozeman's treatment of the Plaintiff. The Court observes that Ms. Matthews, not Dr. Bozeman, provided routine care to the Plaintiff as evidenced by Ms. Matthew's signature appearing on the treatment notes. Dr. Bozeman merely *co-signed* treatment notes on four separate occasions during the course of the Plaintiff's treatment between 2009 and 2014, [Tr. 471, 497, 499, 692], two of these occasions taking place after Ms. Matthews issued her February 2012 opinion. Other than these four instances bearing Dr. Bozeman's co-signature, the record is void of any indication that he conducted additional examinations, was present for other appointments, made treatment recommendations, authored independent treatment notes, or was familiar with the entirety of the Plaintiff's treating history. Therefore, Dr. Bozeman's sporadic participation in the Plaintiff's care lends little, if any, probative value to the supportability of Ms. Matthew's opinion.

### 3. *Connie Mullins, NP*

Ms. Mullins met with the Plaintiff once on July 16, 2014, at Peninsula where the Plaintiff received mental health services, including medication management, case management, and therapy. [Tr. 807-11]. Upon examination, Ms. Mullins noted normal findings, including that the Plaintiff's thought perception was rational and coherent, her judgment and insight was good, and her memory and concentration was not impaired. [Tr. 810]. Ms. Mullins also conducted a medication evaluation, noting that the Plaintiff reported difficulty with sleeping, chronic pain, and that she could not work due to vomiting daily from becoming upset. [Tr. 811]. At this time, the Plaintiff also declined therapy. [Id.]. Ms. Mullins assigned the Plaintiff a GAF score of 55 [id.], indicating moderate symptoms or moderate difficulty, Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34, 4th ed. (revised) 2000.

On September 11, 2014, Ms. Mullins completed a "Mental Residual Functional Capacity Medical Source Statement." [Tr. 821-25]. Ms. Mullins opined that during an eight-hour workday, the Plaintiff would be precluded from performing the following activities five percent of the day: maintain attention and concentration for extended periods of time; perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances; work in coordination with or in proximity to others without being derestricted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and setting realistic goals or make plans independently of others. [Tr. 822-23]. In addition, Ms. Mullins

24

noted that the Plaintiff would be off-task 10 percent of the time during a normal workweek, would be absent from work three days per month, would be unable to complete a full eight-hour workday two days a month, and could not be expected to retain work in a competitive work setting. [Tr. 823-24]. Ms. Mullins based her opinion on progress and office notes, as well as a client interview. [Tr. 824].

The ALJ assigned "little weight" to Ms. Mullins opinion, noting that she was not an "acceptable medical source" and also found the opinion to be overly restrictive given the Plaintiff's report that she longer desired to participate in therapy. [Tr. 26].

The Plaintiff cites her previous argument with regard to Dr. Snow in contending that declining therapy is not "good reason" to reject a "treating source opinion." [Doc. 22 at 16]. The Commissioner responds the ALJ properly observed that Ms. Mullins was not an "acceptable medical source," and therefore, her opinion was not entitled any special weight. [Doc. 18 at 12-13]. Additionally, the Commissioner points to the infrequent nature in which Ms. Mullins had seen the Plaintiff, and that the ALJ properly discounted the opinion which was based on subjective complaints, *i.e.*, a client interview. [Id. at 13].

For the same reasons this Court declined to find Ms. Brown a "treating source" whose opinion was subject to the "good reason" requirement, the Court likewise finds that the opinion of Ms. Mullins, a nurse practitioner and therefore an "other source," was not subject to any special degree of deference. See Meuzelaar v. Comm'r of Soc. Sec., No. 15-2341, 2016 WL 2849305, at *2 (6th Cir. 2016) (holding that "the opinion of a nurse or a nurse practitioner—is entitled to less weight than a physician's opinion because a nurse is not an "acceptable medical source"). Accordingly, the ALJ need only consider the opinion and should explain the weight given to the opinion. See Soc. Sec. Rul. 06-03p, 2006 WL 2329939, *6.

The Court finds that the ALJ complied with the Ruling's requirement. The ALJ considered the Ms. Mullin's opinion and explained that the limitations assessed were not credible due to the Plaintiff expressing that she no longer needed therapy, which was a recommendation that had been made by Peninsula to help treat the Plaintiff's mental impairments. As previously discussed, a claimant's failure to follow treatment recommendations "may cause doubt on a claimant's assertions of disabling pain [or other symptoms]." Strong, 88 F. App'x at 846. Therefore, the Court finds the ALJ did not err in affording Ms. Mullin's opinion "little weight."

## VI.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[5] that the Plaintiff's Motion for Summary Judgment [**Doc.15**] be **GRANTED IN PART AND DENIED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc.17**] be **GRANTED IN PART AND DENIED IN PART.** Upon remand, the Court RECOMMENDS that the ALJ reconsider Dr. Snow's opinion, assign it a specific weight, and provide "good reason" for the weight assigned.

Respectfully submitted,

_____s/ C. Clifford Shirley, Jr._____
United States Magistrate Judge

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).